883 A.2d 158

## MEDICAL MUTUAL LIABILITY INSURANCE SOCIETY OF MARYLAND

v.

### Williette DAVIS, et al.

**No. 84, Sept. Term, 2002.**

Court of Appeals of Maryland.

Sept. 15, 2005.

Albert D. Breault (Joan F. Brault, Brault, Graham, Scott & Brault, LLC, Rockville, on brief), for appellant.

Robert G. Samet (Ashcraft & Gerel, LLP, Rockville, on brief), for appellees.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, C.J.

The issue we are required in this case to decide is whether a judgment creditor, indisputably entitled to post-judgment interest on its judgment, who accepts a remittitur, may receive interest on that portion of the post-judgment interest paid pursuant to a court order, entered in a writ of garnishment proceeding, determining that post-judgment interest begins to run when the judgment is entered, rather than when the remittitur is accepted, where, prior to the initiation of the garnishment proceedings, the judgment debtor's insured had paid into the court the judgment debtor's policy limits and the post-judgment interest at issue accrued after the judgment creditor's acceptance of the remittitur. The Circuit Court for Prince George's County concluded that Williette Davis and Massaquai Kamara, the appellees, were entitled to the post-judgment interest they sought from Medical Mutual Liability Insurance Society of Maryland, the appellant, reasoning that a money judgment had been entered in the garnishment proceedings they initiated. This Court, on its own initiative, granted the appellant's petition for writ of certiorari before the Court of Special Appeals acted. *Medical Mutual Liability Insurance Society of Maryland v. Davis*, 371 Md. 613, 810 A.2d 961 (2002). We shall reverse the judgment of the Circuit Court.

### I.

This is the second time this case has reached this Court. On the first, the issue we addressed was when post-judgment interest began to accrue on a money judgment returned by a jury, where the jury's verdict is subsequently reduced by the

---

\* Eldridge, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

trial court, pursuant to a remittitur. *Medical Mutual Liability Insurance Society of Maryland v. Davis*, 365 Md. 477, 478, 781 A.2d 781, 781 (2001).[1] This Court affirmed the judgment of the Circuit Court. *Id.* at 487, 781 A.2d at 787. Applying Maryland Rule 2–604(b),[2] "in accordance with the purpose of post-judgment interest and the considerable case-law governing the running of post-judgment interest,"[3] *id.* at 484, 781

---

1. The jury verdict was returned in wrongful death and survivor actions, brought in the Circuit Court for Prince George's County and alleging negligence in the delivery of the appellees' son. The verdict was in the amount of $5,313,283.30, which the court entered on the docket on November 13, 1996. *Medical Mutual Liability Insurance Society of Maryland v. Davis*, 365 Md. 477, 478, 781 A.2d 781, 782 (2001).

 Dr. Mody, the defendant doctor, who was insured by Medical Mutual Liability Society of Maryland, filed a motion for a new trial or, in the alternative, for remittitur. *Id.* at 479, 781 A.2d at 782. Having reduced the noneconomic damages awarded to the estate of the appellee's son from $2 million to $350,000, at the parties' suggestion, referencing the cap on noneconomic damages statute, *see* Md.Code (1974, 1998 Repl.Vol.), § 11–108(b), but having denied the motion with respect to the noneconomic damages awarded to the appellees, the Circuit Court granted the motion only as to the medical expenses awarded to the estate. *Id.* Specifically, it ordered a new trial unless the estate remitted those damages to zero. Pursuant to that ruling, a "total judgment [of] $2,350,000 with costs," subject to the estate's acceptance of the remittitur, was entered on the docket. *Id.* at 479–480, 781 A.2d at 782. In lieu of a new trial, the estate accepted a remittitur on September 25, 1997, thus rendering the judgment for $2,350.000 final. *Id.* at 480, 781 A.2d at 782. Thereafter, on February 19, 1998, the appellant tendered payment of Dr. Mody's policy limits of $1,000,000, along with the post-judgment interest accrued from September 25, 1997, the date that the estate accepted the remittitur. *Id.*

 The appellees, believing that post-judgment interest accrued earlier, from the date of the jury's verdict, filed, directly against the appellant, a "Request for Writ of Garnishment for Post–Judgment Interest," seeking the post-judgment interest that had accrued from that date, November 7, 1996. The Circuit Court agreed that the appellees were entitled to additional post-judgment interest, but only from the date of the original judgment, November 13, 1996. Therefore, it entered judgment awarding the appellees post-judgment interest, accounting from that date, at the rate of ten percent, but only on the reduced judgment amount. *Id.*

2. Maryland Rule 2–604(b) provides:
 "(b) *Post-judgment interest.* A money judgment shall bear interest at the rate prescribed by law from the date of entry."

3. We stated that "the purpose of post-judgment interest is obviously to compensate the successful suitor for the same loss of the use of the

A.2d at 785, we held that the appellees "were entitled to the loss of income on the $2,350,000.00 [the amount of the remitted judgment] from November 13, 1996," observing: "Presumably, Medical Mutual earned interest on that sum during the ten-month period from November 1996 to September 1997." *Id.* at 485, 781 A.2d at 785. The appellant paid the post-judgment interest in the amount ordered.[4] Its effort to have the appellees' judgment entered on the docket as fully paid and satisfied met with opposition from the appellees, however, whereupon it filed a Motion To Enter Judgment As Fully Paid And Satisfied.[5] The appellees claimed that additional post-

---

monies represented by a judgment in its favor, and the loss of income thereon, between the time of entry of the judgment *nisi*—when there is a judicial determination of the monies owed it—and the satisfaction of the judgment by payment." *Medical Mutual Liability Insurance Society of Maryland v. Davis*, 365 Md. at 484, 781 A.2d at 785, quoting *I.W. Berman Prop. v. Porter Bros.*, 276 Md. 1, 24, 344 A.2d 65, 79 (1975).

**4.** The appellees sought $206,670.58, the amount resulting from the application of the ten percent interest rate to the reduced judgment amount, calculated from the date of the jury's verdict, November 7, 1996. The Circuit Court set interest "at ten percent (10%) on the judgment as remitted, accounting from November 13, 1996." Thus, the amount ordered by the court, and presumably paid by the appellant, was somewhat less than $206,670.58, notwithstanding the parties' reference to that figure as the amount ordered and paid.

**5.** Maryland Rule 2–645, governing the garnishment of property other than wages and partnership interests subject to a charging order, prescribes how a garnishee should proceed when the judgment creditor fails to file a statement of satisfaction after the garnishee believes the judgment against it has been paid. Rule 2–645(*l*). That procedure involves proceeding under Rule 2–626. That Rule provides:

"(a) *Entry upon notice.* Upon being paid all amounts due on a money judgment, the judgment creditor shall furnish to the judgment debtor and file with the clerk a written statement that the judgment has been satisfied. Upon the filing of the statement the clerk shall enter the judgment satisfied.

"(b) *Entry upon motion.* If the judgment creditor fails to comply with section (a) of this Rule, the judgment debtor may file a motion for an order declaring that the judgment has been satisfied. The motion shall be served on the judgment creditor in the manner provided in Rule 2–121. If the court is satisfied from an affidavit filed by the judgment debtor that despite reasonable efforts the judgment creditor cannot be served or the whereabouts of the judg-

judgment interest on the judgment had become due during the litigation and, what's more, has remained unpaid. The Circuit Court held a hearing on the appellant's motion, after which, agreeing with the appellees, it ordered that the appellant pay interest on the post-judgment interest it had previously paid. At issue on this appeal, therefore, is the propriety of the order entered by the Circuit Court that "assess[ed] judgment interest on the judgment of garnishment ... from January 29, 1999 to the present and continuing."

## II.

Garnishment is a form of attachment, *Fico, Inc. v. Ghingher,* 287 Md. 150, 158–59, 411 A.2d 430, 436 (1980); *Catholic University of America v. Bragunier Masonry Contractors, Inc.,* 139 Md.App. 277, 293, 775 A.2d 458, 467 (2001), *aff'd,* 368 Md. 608, 796 A.2d 744 (2002), and method of execution. *Northwestern Nat'l. Ins. v. William G. Wetherall, Inc.,* 267 Md. 378, 384, 298 A.2d 1, 5 (1972). *See Parkville Fed. Sav. Bank v. Maryland Nat'l Bank,* 343 Md. 412, 418, 681 A.2d 521 (1996) ("A writ of garnishment is a means of enforcing a judgment."). As such, it is derived from a "special and limited statutory power." *Belcher v. Government Employees' Ins. Co.,* 282 Md. 718, 720, 387 A.2d 770, 772 (1978), quoting *Cole v. Randall Park Holding Co.,* 201 Md. 616, 623, 95 A.2d 273, 277 (1953); *see Killen v. American Casualty,* 231 Md. 105, 108, 189 A.2d 103, 105–06 (1963); *Coward v. Dillinger,* 56 Md. 59, 60–61 (1881).

Proceedings via writ of garnishment permit the attachment of the property of the judgment debtor in the

---

ment creditor cannot be determined, the court shall provide for notice to the judgment creditor in accordance with Rule 2-122. "(c) *Costs and expenses.* If the court enters an order of satisfaction, it shall order the judgment creditor to pay to the judgment debtor the costs and expenses incurred in obtaining the order, including reasonable attorney's fees, unless the court finds that the judgment creditor had a justifiable reason for not complying with the requirements set forth in section (a). If the motion for an order of satisfaction is denied, the court may award costs and expenses, including reasonable attorney's fees, under Rule 1-341."

possession of third parties and, when the writ has been issued and served, require the garnishee, the third party possessor, to keep safe the property in his possession or that may come into possession. *Parkville,* 343 Md. at 419, 681 A.2d at 524; *Fico,* 287 Md. at 162, 411 A.2d at 437. *See also Bragunier Masonry,* 139 Md.App. at 293, 775 A.2d at 467–68. In that way, such proceedings enable the judgment creditor to enforce its judgment against the judgment debtor even though the judgment debtor is not in possession of the property. *Parkville,* 343 Md. at 418, 681 A.2d at 524 ("[A writ of garnishment] allows a judgment creditor to recover property owned by the debtor but held by a third party.") *See* PAUL V. NIEMEYER AND LINDA M. SCHUETT, MARYLAND RULES COMMENTARY at 518 (2nd ed.1992).

This Court has characterized, at length, the nature and function of a garnishment proceeding. *E.g., Bragunier Masonry Contractors, Inc. v. Catholic University of America,* 368 Md. 608, 621–24, 796 A.2d 744, 751–53 (2002); *Parkville,* 343 Md. at 418, 681 A.2d at 524; *Fico,* 287 Md. at 158–59, 411 A.2d at 436, and cases therein cited, concluding and emphasizing "the principle growing out of the nature and function of a garnishment proceeding, that the creditor merely steps into the shoes of the debtor and can only recover to the same extent as could the debtor." *Bragunier Masonry,* 368 Md. at 623, 796 A.2d at 752. *Fico* is illustrative. There, we commented:

"A garnishment proceeding is, in essence, an action by the judgment debtor for the benefit of the judgment creditor which is brought against a third party, the garnishee, who holds the assets of the judgment debtor. *Northwestern Nat'l Ins. Co. v. William G. Wetherall, Inc.,* 272 Md. 642, 652, 325 A.2d 869, 874 (1974); *Messall v. Suburban Trust Co.,* 244 Md. 502, 506, 224 A.2d 419, 421 (1966). An attaching judgment creditor is subrogated to the rights of the judgment debtor and can recover only by the same right and to the same extent that the judgment debtor might recover. *Northwestern Nat'l Ins. Co.,* 272 Md. at 650–51, 325 A.2d at 874; *Myer v. Liverpool, London & Globe Ins.*

*Co.,* 40 Md. 595, 600 (1874). The judgment itself is conclusive proof of the judgment debtor's obligation to the judgment creditor. The sole purpose of the garnishment proceeding therefore is to determine whether the garnishee has any funds, property or credits which belong to the judgment debtor. *Northwestern Nat'l Ins. Co. v. William G. Wetherall, Inc.,* 267 Md. 378, 384, 298 A.2d 1, 5 (1972)."

287 Md. at 159, 411 A.2d at 436. *See also Peninsula Ins. Co. v. Houser,* 248 Md. 714, 717, 238 A.2d 95, 97 (1968); *Cole v. Randall Park Holding Co.,* 201 Md. 616, 623–24, 95 A.2d 273, 277 (1953).

█ From this principle, it follows, and is well settled, moreover, that garnishment proceedings are not designed or intended " 'to place the garnishee in a worse position, in reference to the rights and credits attached, than if he had been sued by the defendant [judgment debtor].' " *Bragunier Masonry,* 368 Md. at 624, 796 A.2d at 753, quoting *Farmers' & Merchants' Bank of Baltimore v. Franklin Bank of Baltimore,* 31 Md. 404, 412, 1869 WL 2863, *5 (1869). *See Employers' Liability Assur. Corp. v. Perkins,* 169 Md. 269, 284, 181 A. 436, 443 (1935); *Farley v. Colver,* 113 Md. 379, 385, 77 A. 589, 591–92 (1910). Thus, we have explained:

> "The attaching creditor seeks to have himself substituted to the rights of his debtor as against the garnishee, and by laying his attachment, he acquires no superior right to that of his debtor. The right of condemnation must, therefore, be subject to any such right of set-off or discharge existing at the time of garnishment, as would be available to the garnishee if he were sued by the defendant. Any other rule would, in many cases, work gross injustice, and might, moreover, be subject to great abuse."

*Farmers' & Merchants' Bank,* 31 Md. at 412, 1869 WL at *5. Similarly, in *Perkins,* we said:

> "The plaintiffs in the attachment proceedings have no right superior to that of the assured. They stand in his place, and the same defenses which the insurance carrier had against the right of action on the part of the assured on the

policy of insurance are available to the assurer as the garnishee of the plaintiffs. So, the assured's breach of a condition precedent with which the assurer may bar a recovery by the assured is equally a bar to an attachment laid in the hands of the assurer by a creditor of the assured. The law does not permit the garnishee to be put in a worse position by the issue of a writ of attachment."

169 Md. at 284, 181 A. at 443, citing Hodge and McLane on Attachments, § 148; 76 A.L.R. pp. 235, 236.

The provisions of the pertinent sections of Maryland Rule 2–645, the Rule "govern[ing] garnishment of any property of the judgment debtor, other than wages subject to Rule 2–646 and a partnership interest subject to a charging order, in the hands of a third person for the purpose of satisfying a money judgment," subsection (a), are consistent. Rule 2–645(a) defines the property to which it is applicable as including "any debt to the judgment debtor, whether immediately payable or unmatured." Subsection (b) prescribes the process for obtaining issuance of a writ of garnishment. It requires that a request for writ of garnishment, containing *inter alia* the caption of the case and "the amount owed under the judgment," be filed in the same action in which the judgment was entered. When issued, the Rule provides, the writ will contain the information provided in the request and contain instructions and notices relevant to any answer that may be made. Rule 2–645(c). Rule 2–645(e) pertains to the garnishee's answer. It permits the garnishee, if he timely files an answer, to admit or deny indebtedness to the judgment debtor, to admit or deny possession of any property and, if possessed, how much, to specify the nature and amount of any debt to the judgment debtor and describe the property, and "assert any defense that the garnishee may have to the garnishment, as well as any defense that the judgment debtor could assert." If an issue is joined between the judgment creditor and the garnishee, by the garnishee's timely filing of an answer and the judgment creditor's timely filing of a response, the garnishment proceeding "shall proceed as if it were an original action between the judgment creditor as plaintiff and the

garnishee as defendant and shall be governed by the rules applicable to civil actions." Rule 2–645(g). Nevertheless,

> "[t]he judgment against the garnishee shall be for the amount admitted plus any amount that has come into the hands of the garnishee after service of the writ and before the judgment is entered, but not to exceed the amount owed under the creditor's judgment against the debtor and enforcement costs."

Rule 2–645(j). Subsection (*l* ) provides for the judgment creditor to file a statement of satisfaction when the garnishee satisfies the judgment entered against it, setting forth the amount paid, and, in the event of a default in that regard, for the garnishee to proceed pursuant to Rule 2–626.

## III.

Emphasizing the nature of a garnishment proceeding—"an action by the judgment debtor for the benefit of the judgment creditor which is brought against a third party, the garnishee, who holds the assets of the judgment debtor," *Bragunier Masonry,* 368 Md. at 622, 796 A.2d at 752, quoting *Parkville Federal Savings Bank v. Maryland National Bank,* 343 Md. 412, 418, 681 A.2d 521, 524 (1996)—and its ancillary and auxiliary aspect—it grows out of and is dependent on the action out of which the judgment issued—, the appellant argues that no additional post-judgment interest is payable by it in respect to the judgment the appellees obtained against its insured, since it does not hold assets of its insured. It explains:

> "The judgment debtor in this case has no right of interest on the interest accrued on the original judgment. Medical Mutual satisfied all of its obligations under the terms of the liability policy when it paid post judgment interest of $206,670.58. [The appellees] have come forward with no evidence to the contrary."

The appellant also argues that the appellees are seeking to recover compound interest. The recovery of compound interest is not permitted, it contends, the language of the applica-

ble statute, Md.Code (1973, 2002 Repl.Vol.) § 11–107(a) of the Courts and Judicial Proceedings Article,[6] being in terms of simple interest and this Court having so held, in *Walker v. Acting Director, Dept. of Forests and Parks,* 284 Md. 357, 367, 396 A.2d 262, 267 (1979). It submits:

> "[The appellees'] claim is for interest on unpaid interest. [The appellees] could not recover interest on the unpaid interest if this action was against Dr. Mody directly. [The appellees], therefore, cannot recover against [the appellant] for interest on the unpaid interest."

The judgment awarded against it being for what is, in effect, compound interest, it concludes, must be reversed.

The appellees see it differently, as one might expect. They acknowledge that "Medical Mutual is correct that with the payment of $206,670.58 it discharged its duty under its liability insurance policy." They maintain, however, that the appellant remained "liable for post judgment interest on the judgment of garnishment entered against it in favor of the Appellees." Presuming that the appellant was able to invest the interest on the remitted judgment amount and thereby earn substantial returns, the appellees' position is premised on its belief that "[a] judgment of garnishment is a money judgment [and, therefore, r]egardless of the underlying nature of the debt, once the debt is reduced to a judgment, the statutorily provided interest should begin to accrue."[7] Pursuant to Maryland

---

6. Md.Code (1973, 2002 Repl.Vol.) § 11–107(a) of the Courts and Judicial Proceedings Article provides:

 *"Legal rate of interest on judgments.*—Except as provided in § 11–106 of this article, the legal rate of interest on a judgment shall be at the rate of 10 percent per annum on the amount of judgment."

 Section 11–106 prescribes the interest payable in respect to money judgments entered in an action arising from a contract for the loan of money.

7. Anticipating the appellees' "money judgment" argument, the appellant, countered that this garnishment proceeding produced, rather than a money judgment, a declaratory judgment. As the appellant sees it, the Circuit Court did not order it to pay a sum certain; it decided simply that the appellees' right to the interest they claimed were due

Rule 2–604, they point out, statutorily provided post-judgment interest applies to all money judgments.[8]

Because the purpose of post-judgment interest is to compensate the plaintiff for the loss of the use of the money represented by a judgment and it is this deprivation during litigation that is the "evil" sought to be addressed by the allowance of post-judgment interest, the appellees view the appellant's argument that Maryland Rule 2–604(b) does not apply to "a judgment debt for interest bearing post judgment interest," as illogical and, what is more, as carving out an unwarranted exception.[9] Notwithstanding their concession that a claim for compound interest is forbidden, the appellees, noting their inability to invest or otherwise realize a return from the interest that was the subject of the previous appeal, justify their characterization of the appellant's argument on the absence, in this case, of an intervening judgment against a new party:

> "The distinction between a claim for compound interest on a judgment ... and the claim in this case is that in this case the Appellees had already sought to collect, been refused and thereafter reduced their claim for simple interest to a judgment in garnishment."

Despite their awareness of the nature of garnishment proceedings, the relationship of such proceedings to the judgments they are designed to enforce or execute and that their rights are limited by the rights of their judgment debtor, the

---

ran from the date of the original judgment rather than the date that the judgment was remitted.

**8.** Maryland Rule 2–604(b) provides:

> *"Post-judgment interest.* A money judgment shall bear interest at the rate prescribed by law from the date of entry."

**9.** The appellees argue that, under the doctrines of law of the case and judicial estoppel, the appellant is precluded "from even raising the issue of whether a valid money judgment was entered in this case." At bottom, the argument is premised on the fact that the appellant noted an appeal of the garnishment judgment, thereby "implicitly rais[ing] and assert[ing] that a final, appealable judgment had been entered by the trial court." Neither argument has merit.

appellees argue that "a garnishment is the functional equivalent of a direct action by the debtor, albeit with a realignment of the parties." It follows, therefore, the appellees submit, that, just as the judgment their judgment debtor would receive in a suit by that debtor against his insurance carrier would be a money judgment, so, too, would they receive a money judgment in a garnishment action against the same carrier.[10] They reason:

> "In a garnishment action, where the judgment creditor steps into the shoes of the judgment debtor, he is limited by the rights the judgment debtor has against the garnishee. However, it is equally clear that the Maryland Rules of Procedure, by providing that a garnishment proceeding concludes with the entry of judgment, contemplate that along with those limitations come correlative benefits, one of which is entitlement to judgment interest."

Of the statement in *Walker v. Acting Director, Dept. of Forests & Parks,* 284 Md. at 367, 396 A.2d at 267, that "[a]llowance of interest on the unpaid interest amounts to compound interest on a judgment," on which the appellant relies, the appellees dismiss it as "dicta." They emphasize, moreover, that, rather than a subsequent judgment against a

---

10. The appellees posit the following scenario as the "precise" equivalent of their situation:

> "[I]f Dr. Mody had been forced to pay Appellees the post judgment interest that was the subject of the earlier appeal, and if after paying the Appellees Dr. Mody had been forced to proceed directly against [the appellant], his carrier, for reimbursement, he would then have had a right to recover a money judgment against [the appellant] that would bear post judgment interest, and it is irrelevant that the underlying debt upon which his money judgment against [the appellant] was predicated was for interest.... [The appellees] have reduced the underlying interest debt to a judgment capable of itself bearing interest, and, as such, they are entitled to judgment interest on the judgment of garnishment."

As the appellant points out, the two scenarios are not "precisely" the same. The one the appellees posit is a breach of contract action, as to the damages for which postjudgment interest may indeed be payable. The garnishment action, on the other hand, is ancillary to the action which gave rise to the judgment on which execution is sought. It can produce recovery only for that which belongs to the judgment debtor or which the garnishee owes the judgment debtor.

different party, as in the case *sub judice,* what was disallowed in *Walker* was "detention damages sought in the same action from the same party in the form of 'interest' in a judgment of condemnation."

## IV.

■ Post-judgment interest begins to run on a money judgment from the date of the entry of that judgment, Maryland Rule 2–604(b), and it accrues, at the rate of 10 percent per annum, the rate prescribed by law, § 11–107 of the Courts and Judicial Proceedings Article. Post-judgment interest continues to accrue until the judgment is satisfied by payment. *Maryland State Highway Admin. v. Kim,* 353 Md. 313, 327, 726 A.2d 238, 245–46 (1999); *I.W. Berman Prop. v. Porter Bros.,* 276 Md. at 24, 344 A.2d at 79. *See Mayor and City Council of Baltimore v. Kelso Corp.,* 294 Md. 267, 271, 449 A.2d 406, 408 (1982) (Post-judgment interest serves to "compensate the judgment creditor for the loss of the monies due and owing to him by the judgment debtor from the time the judgment is entered until it is paid."). This is consistent with the purpose of post-judgment interest, "to compensate the successful suitor for the same loss of the use of the monies represented by a judgment in its favor, and the loss of income thereon, between the time of entry of the judgment . . .— when there is a judicial determination of the monies owed it— and the satisfaction of the judgment by payment." *Medical Mutual Liability Insurance Society of Maryland v. Davis,* 365 Md. at 484, 781 A.2d at 785 (2001), quoting *I.W. Berman Prop. v. Porter Bros.,* 276 Md. at 24, 344 A.2d at 79.

■ Judgment was entered in favor of the appellees and the estate of their son, and against the appellant's insured, albeit in an amount greater than the amount ultimately determined to be due, on November 13, 1996. There followed thereafter post-trial proceedings, lasting close to a year, resulting in the ordering of a new trial unless the estate remitted all of the medical expenses awarded to the estate. The estate accepted the remittitur on September 25, 1997,

thus finalizing the judgment amount due the appellees. Several months thereafter, on February 19, 1998, the appellant paid the judgment by tendering its insured's policy limits. It also tendered post-judgment interest, but only in an amount calculated from the date of the acceptance of the remittitur. Believing that additional post-judgment interest was due, that post-judgment interest began to run with the initial entry of the judgment, and relying on the appellant's contractual undertaking to pay post-judgment interest in respect to any judgment entered against its insured, *Medical Mutual Liability Insurance Society of Maryland v. Davis,* 365 Md. at 480 n. 3, 781 A.2d at 782 n. 3, the appellees filed directly against the appellant a garnishment proceeding to recover the additional post-judgment interest. This Court concluded that, notwithstanding that the judgment amount was reduced as a result of post-trial proceedings, post-judgment interest accrued when the judgment was entered and, consequently, the appellees were entitled to a portion of the additional post-judgment interest they sought. *Id.* at 487, 781 A.2d at 786–87. Consistent with that order, the appellant paid the amount of additional post-judgment interest found to be due.

On February 19, 1998, when the appellant paid its insured's policy limits, in payment of the judgment against its insured, and partial post-judgment interest, the appellees were entitled to receive, and the appellant's insured was obligated to pay, an amount equal to the amount of the judgment, plus interest accrued from the date of the entry of the judgment. Contractually, the appellant was required to pay that amount on behalf of its insured. Because the appellant's payments were not sufficient to discharge the total indebtedness, the insured remained indebted to the appellees to the extent of the unpaid post-judgment interest. Likewise, the appellant remained contractually obligated to its insured to the same extent and, thus, possessed property, of that value, belonging to the appellees' judgment debtor. Maryland Rule 2–645(a).

When, however, the appellant paid the post-judgment interest determined by this Court to be payable to the appellees, the judgment debtor's, the appellant's insured's, total obli-

gation under the judgment had been satisfied; the judgment had been paid and so, too, had the appellees been compensated for the delay between the entry of judgment and its payment. In addition, as the appellees concede, the appellant also discharged its contractual obligation to its insured to pay accrued post-judgment interest on any judgment against its insured. Consequently, no longer being indebted to its insured, the appellant no longer possessed any property of the judgment debtor.

It is well settled, as we have seen, *Bragunier Masonry*, 368 Md. at 622, 796 A.2d at 752, that the judgment creditor in a garnishment proceeding is subrogated to the rights of the judgment debtor and can "recover from the garnishee only to the extent that the judgment debtor could have done so." The creditor's rights may not rise above the rights the debtor would have had against the garnishee. *Id.* at 623, 796 A.2d at 753; *see Peninsula Ins. Co. v. Houser*, 248 Md. 714, 717, 238 A.2d 95,97 (1968); *Messall v. Suburban Trust Co.*, 244 Md. 502, 506, 224 A.2d 419, 421 (1966); *Bendix Radio Corp. v. Hoy*, 207 Md. 225, 229, 114 A.2d 45, 47 (1955); *Thomas v. Hudson Sales Corp.*, 204 Md. 450, 105 A.2d 225, 227 (1954); *Cole v. Randall Park Holding Co.*, 201 Md. 616, 623–24, 95 A.2d 273, 277 (1953). Consequently, the appellees may recover from the appellant only to the extent that its insured, the judgment creditor, could recover. Because the appellant does not possess any of its insured's property and has discharged its contractual obligations to him, as the appellees concede that it has, there is nothing that the appellant's insured can recover from the appellant. As a result, being subrogated to the rights of the appellant's insured, the appellees are in no better position. Were it otherwise, the appellees would have a "superior right to that of [their] debtor" and it would "place the garnishee in a worse position, in reference to the rights and credits attached, than if he had been sued by the defendant [judgment debtor]." *Farmers'& Merchants' Bank v. Franklin Bank, supra*, 31 Md. at 412. Moreover, a garnishor's judgment against a garnishee may not "exceed the amount owed under the creditor's judgment against the debtor

and enforcement costs." Maryland Rule 2–645(j); *see Chromacolour Labs, Inc. v. Snider Bros. Property Management, Inc.*, 66 Md.App. 320, 331, 503 A.2d 1365, 1370 (1986).

Nor may the appellees recover post-judgment interest on an award of post-judgment interest. Compound interest is interest paid on unpaid interest. *B.F. Saul Co. v. West End Park North, Inc.*, 250 Md. 707, 717, 246 A.2d 591, 598 (1968). Such interest on a judgment is not permitted in this State. *Walker v. Acting Director, Dept. of Forests and Parks, supra,* 284 Md. at 367, 396 A.2d at 267. *See Mayor and City Council of Baltimore v. Kelso Corp.*, 294 Md. 267, 270, 449 A.2d 406, 407 (1982); *Agnew v. State,* 51 Md.App. 614, 654 n. 29, 446 A.2d 425, 447 n. 29 (1982).

In *Walker,* a condemnation case, although it had no right to quick take and, thus, title to the land condemned passed upon payment of the judgment and costs, the State obtained, prior to the inquisition, an ex parte order granting it possession. Subsequent to the inquisition, but without paying any compensation, it took possession of the land condemned and, thereafter, being aggrieved by the amount of the inquisition, noted an appeal. This Court dismissed the State's appeal on the grounds that by taking possession of the land and proceeding to develop it, the State had waived its right of appeal, but the State did not pay the judgment until "three weeks less one day after the filing of our mandate," *id.* at 360, 396 A.2d at 263, and, then, it paid only the judgment; the State made no effort to pay interest on the award and did not do so for almost five years, while the case made its way back to this Court. We rejected the landowner's argument that he was entitled to "detention money" or "damages for delay," accounting from the date of passage of the ex parte order to the date when the State paid interest on the judgment, calculated at the rate of return the State was earning upon its investments. *Id.* at 360–61, 396 A.2d at 264. Instead, we held that the landowner "was entitled to interest at the rate of 6% per annum on the amount of the jury's award from the date of the entry of the judgment nisi to the date of the deposit of this

sum with the clerk of the circuit court, at which time it became available to [him]." *Id.* at 366–67, 396 A.2d at 267. The Court was clear: any award of interest beyond the date of payment of the judgment was error, since "[a]llowance of interest on the unpaid interest amounts to compound interest on a judgment. We are acquainted with no rule of law in this State which would permit such a claim." *Id.* at 367, 396 A.2d at 267.

There is no question but that the object of these proceedings is the recovery of post-judgment interest as the result of the delay, albeit due to good faith litigation of an unresolved issue, in the payment of other post-judgment interest. The appellees could not prevail on this point in an action against the appellant's insured, their judgment creditor, and the appellees concede the point. The appellees, despite the appellate delay, were compensated for the loss of the use of the monies represented by the judgment against the appellant's insured between the entry of the judgment and the satisfaction of the judgment by payment. Again, the appellees stand in the shoes of the judgment debtor, being entitled to recover only to the extent that the judgment debtor could, *Bragunier Masonry*, 368 Md. at 622, 796 A.2d at 752, and also being subject to "any defense that the judgment debtor could assert." Maryland Rule 2–645(e).

We are aware that a different result recently was reached by the Indiana intermediate appellate court. *Grubnich v. Renner*, 746 N.E.2d 111 (Ind.App.2001), *trans. denied, Grubnich v. Renner*, 761 N.E.2d 416 (Ind.2001). In that case, a medical malpractice case, the defendant dentist, after an unsuccessful appeal, paid the portion of a jury judgment applicable to him.[11] *Id.* at 113. He did not pay post-judgment interest that had accrued on his portion of the judgment, however, relying, apparently, on *Poehlman v. Feferman*, 693 N.E.2d 1355, 1359 (Ind.App.1998), a decision by another panel

---

11. The jury returned a verdict of $150,000. Pursuant to the medical malpractice statute then in effect, the defendant dentist's maximum liability was $100,000, the remainder being payable by the Patient's Compensation Fund.

of the intermediate appellate court. In that decision, the court indicated that, notwithstanding a plaintiff's entitlement to post-judgment interest, a defendant doctor's liability is limited to $100,000 under the Medical Malpractice Act. *Id.* at 116. That decision, however, had been vacated when, in 706 N.E.2d 173 (Ind.1998), the Indiana Supreme Court granted transfer. *Id.* After the Supreme Court issued its opinion, holding that the $100,000 liability limit provided by the Medical Malpractice Act does not apply to post-judgment interest and costs, *see Poehlman v. Feferman,* 717 N.E.2d 578, 582 (Ind.1999), and, therefore, both the doctor and the Patient's Compensation Fund were required to pay accrued post-judgment interest on the underlying damage award, 717 N.E.2d at 584, the plaintiff sought payment of post-judgment interest from both parties. *Grubnich v. Renner, supra,* 746 N.E.2d at 114. Although the Fund paid its portion of the post-judgment interest, the doctor refused to pay, prompting the filing, by the plaintiff, of a motion for, *inter alia,* post-judgment interest and costs. *Id.* Affirming the trial court, the intermediate appellate court held that the plaintiff was entitled to post judgment interest and, concluding that "the order requiring [the doctor] to pay interest is a money judgment," [12] *id.* at 118, to interest on the unpaid interest. *Id.* Explaining the latter holding, the court said:

"Here, Grubnich should have paid the interest at the time he paid the $100,000 as satisfaction for the money judgment against him. However, he failed to do so. Rather, he forced the Renners to seek enforcement of the judgment from the trial court. On August 22, 2000, the trial court ordered Grubnich to pay post-judgment interest on the $100,000. Grubnich has not yet paid that amount. Thus, the Renners

---

**12.** Indiana Code, § 24-4.6-1-101 provides: "Except as otherwise provided by statute, interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction at:

 \* \* \* \* \* \*

"(2) an annual rate of eight percent (8%) if there was no contract by the parties."

are entitled to post-judgment interest on the judgment for interest, which began accruing on August 22, 2000, and runs until the date Grubnich pays the judgment for interest."

*Id.* It previously had stated the purpose of post-judgment interest: "to compensate fully the injured party by providing interest for the deprivation of the use of money." *Id.*

The Indiana Court of Appeals relied on *Indiana Revenue Bd. v. State ex rel. Bd. of Comm'rs of Hendricks County,* 270 Ind. 365, 385 N.E.2d 1131 (1979). That was a "For Mandate" [13] action against the Indiana Revenue Board, brought by the State on behalf of counties, to enforce a statute providing for the sharing of inheritance tax revenues between the State and the counties in which they were collected. The trial court mandated that the State Revenue Board pay the money owed to the counties, in a lump sum, to the clerk of the court. Although it paid the judgment, albeit six months later, the Board did not pay post-judgment interest on the judgment and it continued to refuse to pay the interest, whereupon the counties sued separately for the interest, obtaining a judgment therefor. The trial court found for the counties, assessing post-judgment interest on the judgment amount. The Supreme Court of Indiana affirmed.

Rejecting the Board's argument that interest is not properly assessed on a mandate judgment, the court held that such a judgment is "effectively a money judgment," on which interest is assessed, explaining:

> "Here, the State Revenue Board was mandated to pay the amount of money due to the counties in a lump sum to the Clerk of the Shelby Circuit Court. The mandate judgment,

---

**13.** A "For mandate" action is an action "to compel the performance of a duty resulting from office, trust, or station." *Indiana Revenue Bd. v. State ex rel. Bd. of Com'rs of Hendricks County,* 270 Ind. 365, 385 N.E.2d 1131, 1134 (1979). The court explained: "The mandate itself is meant to accomplish what cannot otherwise be accomplished through ordinary legal or equitable remedies. Here, the State Revenue Board was mandated to pay the amount of money due to the counties in a lump sum to the Clerk of the Shelby Circuit Court."

then, was also effectively a money judgment. The Result is the same."

Id. at 1134. The court also held that the trial court properly awarded post-judgment interest on the counties' judgment for accrued post judgment interest. It reasoned:

"The Indiana Revenue Board should have paid the interest into court on the $16,555,787.95 judgment at the same time it paid the judgment itself. By delaying and refusing, the Indiana Revenue Board forced the State of Indiana, on behalf of the ninety-nine counties, to sue separately for the interest. . . . [T]hat suit resulted in a final judgment in the Marion Superior Court. . . . The final judgment was for the amount of interest which had accrued pursuant to Ind.Code s 34–2–22–1 (Burns 1973). That final judgment, then (rendered in the Superior Court of Marion County), was subject to the accrual of interest pursuant to Ind.Code s 34–4–16–6 (Burns 1973)."

*Id.* at 1135.

 We are not persuaded. First, *Grubnich* and *Indiana Revenue Bd.*, on which the appellees relied, did not apply Maryland law and, in fact, conflict with Maryland law. Therefore, they are not binding on this Court. In both cases, unlike in *Walker*, where such considerations, while regrettable, were determined not to have been a sufficient basis for an award of post-judgment interest, the court found it significant that the judgment debtors refused to pay the post-judgment interest, thus delaying the creditor's enjoyment of the interest and forcing the creditor to take additional action to obtain the interest. Second, this case is a garnishment proceeding, ancillary to the malpractice case out of which the subject judgment emanated. On the other hand, both *Grubnich* and *Indiana Revenue Bd.* are actions on the judgments. Finally, we are not persuaded that the judgment in this case is a money judgment within the meaning of Maryland Rule 1–202(p).

Maryland Rule 1–202(p) provides:

"(p) *Money judgment.* 'Money judgment' means a judgment determining that a specified amount of money is immediately payable to the judgment creditor. It does not include a judgment mandating the payment of money."

Although once the issue is joined between the judgment creditor and the garnishee, the garnishment proceeding proceeds as any original action, with the judgment creditor as plaintiff and the garnishee as defendant and is governed by the rules applicable to civil actions, such actions are not original actions, independent of the actions out of which the judgments sought to be enforced emanate. Garnishment proceedings, rather, are certainly related to, and, indeed are ancillary to such actions. Thus, the amount of the judgments obtained in the underlying action, to which the garnishment action relates and, indeed, depends, is information necessary for the issuance of a writ of garnishment. Also, the judgment itself conclusively establishes the judgment debtor's obligation to the judgment creditor. Indeed, the purpose of a garnishment proceeding is to satisfy money judgments with property of the judgment debtor that is in the hands of third persons. Pursuant to that purpose, garnishment proceedings necessarily must determine whether the garnishee has any funds, property or credits which belong to the judgment debtor. *Northwestern Nat'l Ins. Co. v. William G. Wetherall, Inc.,* 267 Md. 378, 384, 298 A.2d 1, 5 (1972).

In this case, there was no issue of whether the appellant had property belonging to the judgment debtor, given its contractual obligation to its insured under his liability policy to pay post-judgment interest on any liability judgment. Nor was there any issue of the extent of the judgment debtor's obligation to the judgment creditor. The payment of postjudgment interest on a money judgment and the percentage rate, being statutorily required, the calculation of the amount of interest due on a judgment is easily determined. Deciding the date from which post-judgment interest was payable, the issue in the initial garnishment proceeding, was a necessary and preliminary step to determining whether the

appellant had property of the judgment debtor. If the date from which the interest ran was the date of the remittitur, then the appellant would not have had property of the judgment debtor, it having paid all amounts due. On the other hand, if the date was, as this Court held that it was, the date that the judgment was entered, the appellant would have had property of the judgment debtor, namely, the amount of the post-judgment interest that had accrued on the judgment prior to payment. Once it has been determined that the garnishee has property of the judgment debtor, the garnishment judgment is in the nature of "a judgment mandating the payment of money;" it orders satisfaction of the judgment from the property in the garnishee's hands.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER AN ORDER CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY THE APPELLEES.