**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1161**

THE JOHNS HOPKINS HOSPITAL,

　　　　　Plaintiff - Appellee,

　　　v.

ALLYSON POST,

　　　　　Defendant – Appellant,

　　　and

CHARLES SCHWAB AND COMPANY,

　　　　　Garnishee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.　Marvin J. Garbis, Senior District Judge.　(1:99-cv-02461-MJG)

Argued:　January 29, 2009　　　　　Decided:　April 7, 2009

Before WILKINSON, TRAXLER, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Heriberto Medrano, LAW OFFICE OF HERIBERTO MEDRANO, Harlingen, Texas, for Appellant.　Gary Steven Posner, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellee.　**ON BRIEF:** Osiris A. Gonzalez, LAW OFFICE OF HERIBERTO MEDRANO, Harlingen, Texas, for Appellant.　Susan Jaffe Roberts,

WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

From June 1997 to February 1998, Appellant Allyson Post, a Texas resident, was a patient at Johns Hopkins Hospital in Baltimore and incurred charges of $322,593.40. Post's insurance did not fully cover these charges, and Post failed to pay the remaining balance of $151,763.88. Hopkins brought a collection action against Post in the United States District Court for the District of Maryland. The district court entered a judgment in favor of Hopkins for $166,180.49, which reflected the unpaid balance and prejudgment interest.

After her release from the hospital, Post created and transferred assets to a number of entities, including the Allyson A. Post Family Limited Partnership, the Allyson A. Post Living Trust and the Allyson A. Post Management Trust. Attempting to locate and preserve assets belonging to Post that might satisfy its judgment, Hopkins brought a fraudulent conveyance action against Post in Texas state court and obtained an order enjoining Post from "removing non-exempt property" beyond the court's jurisdiction and "from establishing any trusts and/or entities for use in the transfer . . . of any non-exempt property and assets of Allyson Post." J.A. 149.

Hopkins deposed Post as part of the Texas proceeding and learned that Post's income derived from a personal injury lawsuit settlement and social security disability benefits.

These funds, as well as assets derived from these funds, were transferred to Post's trusts, which she controlled, and were ultimately placed in an account managed by Charles Schwab & Company in the name of the Allyson A. Post Trust (the "Schwab Account").

In August 2006, Hopkins decided to seek partial satisfaction of its federal judgment against the Schwab Account, which had a net value of $150,857.02 at the time. Under Rule 69(a) of the Federal Rules of Civil Procedure,

> [a] money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1) (emphasis added). The parties agree that no federal statute applies in this instance and that the Maryland Garnishment procedure set forth in Maryland Rule 2-645 governs.

A garnishment proceeding pursuant to Maryland Rule 2-645 provides a means for a judgment creditor to enforce its judgment by attaching property owned by the judgment debtor but held by a third party, i.e., the garnishee. See Medical Mut. Liab. Ins. Soc'y of Md. v. Davis, 883 A.2d 158, 162 (Md. 2005). Under Maryland law, "[t]he judgment itself is conclusive proof of the judgment debtor's obligation to the judgment creditor. The sole

4

purpose of the garnishment proceeding . . . is to determine whether the garnishee has any funds . . . which belong to the judgment debtor." Fico, Inc. v. Ghingher, 411 A.2d 430, 436 (Md. 1980).

The garnishment process is commenced when the judgment creditor files a request for a writ of garnishment, which must include the caption of the action, the amount of the judgment, the name of the judgment debtor and the name of the garnishee, as part of the same action in which the judgment was obtained. See Md. Rule 2-645(b). The clerk of court then issues the writ to the garnishee, directing that the garnishee hold any property belonging to the judgment debtor "subject to further proceedings." Md. Rule 2-645(c)(2). The garnishee must file an answer admitting or denying that it holds the debtor's property or asserting a defense to the garnishment. See Md. Rule 2-645(e).

Maryland's procedure requires that the judgment debtor be notified of the writ, of his right to contest the garnishment, and of the fact that exemptions are available for certain types of property. See Md. Rule 2-645(c)(4),(5). Pursuant to Maryland Rule 2-643(d), the judgment debtor may seek release of exempt property by filing a motion. See Md. Rule 2-643(c)(2) ("Upon motion of the judgment debtor, the court may release some

5

or all of the property from a levy if it finds that . . . the property is exempt from levy.")

The district court issued a writ of garnishment to Charles Schwab attaching Post's trust account and any assets it held for Post.  Post moved for release of the Schwab Account from levy, claiming that the assets contained in the account came from a personal injury settlement Post received in 1986 and were therefore exempt from judgment under Maryland law.

Maryland law provides a list of items that are exempt from execution on a judgment, including

> [m]oney payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings.  This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief.  Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.

Md. Code. Cts. & Jud. Proc. § 11-504(b)(2).  Damages for pain and suffering and loss of future wages are exempt under § 11-504(b)(2), but damages for lost past wages, injuries to property, and punitive damages are not exempt.  See Calafiore v. Werner Enters., Inc., 418 F. Supp. 2d 795, 799 (D. Md. 2006).

According to Post's deposition testimony, the Schwab Account contains funds from a 1986 personal injury settlement that was structured as follows:  an initial payment of $150,000; lifetime monthly payments of $2,500; and $250,000 paid in five

6

lump-sum installments scheduled for 1986, 1991, 1996, 2001 and 2006. Under the terms of the settlement agreement, Post agreed to release all past, present and future claims related to the personal injury claim. The agreement did not specifically describe the losses included in the "past, present and future claims" released by Post. The district court, however, found that "some portion of the payments in the Agreement could be considered exempt as compensation for pain and suffering and loss of future earnings," while "some portion of the payments under the Agreement could fairly be allocated to non-exempt purposes." J.A. 188. Additionally, the district court determined that the proceeds from Social Security disability payments contained in the Schwab Account were not exempt under § 11-504(b)(2) because the judgment resulted from "necessities contracted for after the disability [was] incurred." J.A. 189.

Thus, the court concluded that the account contained commingled exempt and non-exempt assets and that there was no non-speculative basis upon which to apportion the funds into exempt and non-exempt amounts. The district court reasoned that the burden of proof was dispositive since neither party would be able to prove what portion of the account was exempt and what portion was not. Noting a lack of interpretive guidance from Maryland appellate courts, the district court considered other states' exemption laws and concluded the general rule was that

7

the party seeking the exemption bears the burden of proof. And, because Post had no means of establishing the portion of the Schwab Account that was actually exempt, the district court held that Hopkins could levy on the entire account.

On appeal, Post does not dispute that the Schwab Account contained both exempt and non-exempt assets, nor does she contest the district court's conclusion that there is no basis upon which to apportion the funds in the account. Instead, Post contends that the district court committed reversible error in concluding that the burden rests on the judgment debtor to prove that the funds are exempt from collection in satisfaction of a judgment under Maryland's garnishment procedure. Post believes that in allocating the burden of proof as it did, the district court failed to discern and observe the essential purpose of Maryland's exemption statute: to afford its debtors greater protection from creditors than is provided under federal bankruptcy law. Indeed, like many other states, Maryland decided "to opt out of [the] federal exemption scheme" and enact a generally broader exemption scheme of its own. See Wolff v. Gibson (In re Gibson), 300 B.R. 866, 869 (D. Md. 2003). Post reasons that by assigning her the burden of proving her exemption under § 11-504(b)(2), the district court actually construed Maryland law to give her less protection than is available in federal bankruptcy proceedings, which place the

8

burden of proof on a creditor objecting to a debtor's claimed exemption. See Fed. R. Bankr. P. 4003(c). Therefore, Post concludes, the district court's interpretation of § 11-504(b)(2) was impermissibly narrow and failed to achieve the purpose of the Maryland exemption scheme. See In re Hurst, 239 B.R. 89, 91 (Bankr. D. Md. 1999) (noting that courts should construe Maryland's exemptions liberally to achieve the intended purpose).

We cannot subscribe to Post's argument. First, Post's focus on bankruptcy procedure is misguided. Although the bankruptcy code looks to state law for exemptions for states that have "opted out" of the federal scheme, see 11 U.S.C. § 522(b)(2), the procedural rules that apply in federal bankruptcy cases are of course federal. Section § 11-504(b), which is silent as to the burden of proof, tells us what may and may not be protected from judgment creditors; Bankruptcy Rule 4003(c) tells us who must prove that a given asset is exempt under state law. See Peoples' State Bank of Wells v. Stenzel (In re Stenzel), 301 F.3d 945, 947 (8th Cir. 2002). Since this is a garnishment proceeding under state law, Post's bankruptcy analogy is of limited use.

We focus instead on the relevant procedural context -- Maryland's procedures for enforcement of a judgment by garnishment. See Md. Rule 2-645. As noted above, the procedure

is commenced by the judgment creditor's request for a writ of garnishment. If the garnishee fails to answer, then the judgment creditor is entitled to a default judgment for the asset to be applied in satisfaction of the judgment. See Md. Rule 2-645(f). If the garnishee answers and asserts a defense and the judgment creditor disputes the defense by filing a reply, then the case proceeds as would a typical civil action with the judgment creditor as plaintiff and the garnishee as defendant. See Md. Rule 2-645(g). To recover in a garnishment action, the judgment creditor must present evidence legally sufficient to prove a liability of the garnishee which existed when the writ was issued or when the case was tried. "The test of liability of the garnishee to the judgment creditor is whether the garnishee has any funds, property or credits which belong to the judgment debtor." Consolidated Constr. Servs., Inc. v. Simpson, 813 A.2d 260, 268 (Md. 2002) (emphasis and internal quotation marks omitted). No provision in the Maryland Rules requires the judgment creditor to prove that the property held by the garnishee is non-exempt property.

Significantly, the judgment debtor must take affirmative steps to assert an exemption. The protection given to judgment debtors under Maryland's exemption scheme does not operate automatically in a garnishment proceeding. As directed by Maryland Rule 2-645(i), the judgment debtor must make a motion

10

under Maryland Rule 2-643 before the court can release exempt property. Therefore, in this context, the judgment debtor's election to assert an exemption is in the nature of an affirmative defense. Section § 11-504(b) operates here as it does in bankruptcy proceedings – it defines what property is exempt from levy. It does not purport to displace Maryland's procedure for collecting judgments.

Finally, we reject the suggestion that the district court's decision produced illogical results. It makes greater sense to allocate the burden of proof to the judgment debtor in these circumstances, as the debtor is in a far better position than the judgment creditor to know about the existence and nature of his assets. This view is also consistent with the policy of numerous other jurisdictions that require judgment debtors to prove an exemption in judgment enforcement or collection proceedings. See, e.g., LSF Franchise REO I, LLC v. Emporia Rests., Inc. 152 P.3d 34, 41 (Kan. 2007) (explaining that under Kansas garnishment procedure "the judgment debtor bears the burden of proof to show that any of the funds in question are exempt from garnishment"); Freeman v. Freeman, 464 N.Y.S.2d 676, 677 (N.Y. Sup. Ct. 1983) (explaining that "burden of proof is upon the judgment debtor to establish that the [debtor's] account is exempt from levy"); Hancock v. Stockmens Bank & Trust Co., 739 P.2d 760, 761-62 (Wyo. 1987) (explaining that burden of

11

proof rests on the party claiming the exemption to establish the nature of the funds, requiring the judgment debtor to establish the exempt portion of funds in a joint account); Hoffman v. Weiland, 29 N.E.2d 33, 34 (Ohio Ct. App. 1940) (burden of proof regarding the existence or applicability of an exemption or defense rests with the judgment debtor).

Accordingly, we affirm the decision of the district court.

AFFIRMED

12